# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                                    **CASE NO: 6:17-cr-160-Orl-31KRS**

**FERNANDO GARCIA-GEIGEL**

## ORDER

This Matter comes before the Court on the Motion to Suppress filed by Defendant Fernando Garcia-Geigel (Doc. 51) and the Response in Opposition filed by the United States (Doc. 53). An evidentiary hearing was held on January 4, 2018.

The Motion to Suppress is quite broad; the Defendant moves to suppress "any and all identification of the defendant," Mot. at 3, and asserts that "all evidence obtained as to all counts of the indictment is a product of an illegal warrantless arrest, search, and seizure." Mot. at 14. All evidence mentioned by the Defendant in his Motion, including his identification, was obtained during the course of events connected to the search of three different parcels. For simplicity, the Court refers to the parcels as Parcels 1, 2, and 3.

### I.    Parcel 1

On March 13, 2017, the United States Postal Inspection Service ("USPIS") intercepted Parcel 1, which had been sent via priority mail from Vega Alta, Puerto Rico, to a Post Office ("P.O.") Box in Plymouth, Florida, that was registered to the Defendant. According to law enforcement testimony, because Parcel 1 was mailed from a known drug source city, was sent with a confirmation number but no signature requirement, was covered in excessive tape, and was of a size and weight that indicated it might contain a controlled substance, investigators decided to have

a trained narcotics detection canine examine Parcel 1. On March 14, 2017, the canine alerted to Parcel 1. Following the canine alert, USPIS agents engaged in various investigatory efforts, including attempting to identify a man who came to the Post Office looking for Parcel 1, communicating with that same man by way of an undercover USPIS number, and informing him as to where that man could pick up Parcel 1. The telephone number used by the man was registered to the Defendant. While law enforcement waited to see if the Defendant would come to pick up Parcel 1, they also sought a search warrant for Parcel 1. This search warrant was authorized on March 23, 2017, and executed on March 24, 2017.

The Court finds that law enforcement had reasonable suspicion to detain Parcel 1 until probable cause could be established. *See United States v. Bright*, No. 16-16127, 2017 WL 4176207, at *2 (11th Cir. Sept. 21, 2017) (describing the combination of handwritten labeling, heavy taping, lack of a signature requirement, and an origin city that is a known narcotics source as reasonably suspicious). Further, narcotics detection canines need not be maintained on site; reasonable detention in order to obtain a canine is permissible. *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993). In determining whether the delay in seeking a search warrant was reasonable under the Fourth Amendment, courts evaluate the totality of the circumstances, including factors such as the duration of the delay, consent, the significance of interference with the person's possessory interest, and the government's interest in holding the property. *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012). Here, the duration of the delay was not very long, particularly considering that the duration was apparently impacted by the Defendant's own lack of effort with respect to picking up Parcel 1. The delay was, at most, ten days from the date of the canine alert until the date of issuance of the warrant; it was not two to three weeks, as the Defendant avers in his Motion. *See* Mot. at 10. The Defendant's possessory interest was minimal, because he declined

to pick up Parcel 1 after being told he could do so. Indeed, the Defendant's own Motion skeptically refers to Parcel 1 as "allegedly address[ed] to Fernando Garcia." The government had a strong interest holding the property as evidence, because it had already probable cause to believe it contained narcotics, based on the canine alert. Having reviewed the evidence, the Court finds that the delay in seeking the search warrant was reasonable.

## II. Parcel 2

On April 27, 2017, the USPIS intercepted Parcel 2, en route from Puerto Rico to an Orlando, Florida P.O. Box that was registered to the Defendant. The next day, a narcotics detection canine alerted to Parcel 2, and the Defendant went to the Post Office to pick up Parcel 2. After the Defendant picked up Parcel 2, agents approached him and asked him to answer some questions. The Defendant agreed, and accompanied the agents to the loading dock behind the Post Office, where he was interviewed[1] in Spanish due to his limited English proficiency. The Defendant admitted to the agents that Parcel 2 belonged to him, and he told them that it contained pottery. The Defendant signed a form (in Spanish) consenting to search of the parcel and its contents, his vehicle, and his cell phone. The agents opened Parcel 2, found pottery inside, and broke open the pottery, revealing two kilograms of cocaine that had been hidden within the pottery. According to law enforcement testimony, at that point, the Defendant was given *Miranda* warnings. Ultimately, the Defendant freely left the Post Office.

The Defendant maintains that he did not consent to the search. He testified that he signed the consent form without reading it, *after* the agents searched Parcel 2, his vehicle, and his cell phone. The Defendant further claimed that he only signed the form so that he would be permitted

---

[1] The interview took place partially outdoors on the loading dock, and partially in an employee break room at the Post Office.

to go. The Defendant testified that he did not believe he was free to go, because the agents asked him if he would answer questions. Testimony from two law enforcement agents contradicts the Defendant's testimony; they stated that the Defendant consented to the search *before* it was conducted. The explanation of events in the Defendant's own Motion appears to concede that was "written consent was given," and seems to indicate that consent was given prior to the search. See Mot. at 5. Having heard evidence on the issue, the Court finds that the Defendant freely and voluntarily consented to the search of the contents of Parcel 2 (which included the search of the pottery itself), the Defendant's cell phone, and the Defendant's vehicle, and that the Defendant gave consent prior to the searches being conducted.

The Defendant states that the agents broke open the pottery in the box without his consent. The Defendant placed no explicit limitation on the scope of the search, and he was aware that the agents were searching Parcel 2 for narcotics. There was nothing in Parcel 2 except for the pottery, and the pottery served as containers for narcotics. The agents need not have "separately request[ed] permission to search each container" within Parcel 2. *See Florida v. Jimeno*, 500 U.S. 248, 252 (1991).

To the extent that the Defendant argues that an illegal detention occurred,[2] Court also finds that the Defendant was not detained, but rather was free to go at any time during the interview. *Cf. Ohio v. Robinette*, 519 U.S. 33, 35 (1996) (holding that the Fourth Amendment does not require that a defendant must be told he is "free to go" for his consent to search to be voluntary).

---

[2] While the Motion hints that the Defendant was not allowed to leave, it stops short of drawing any connection between the consent to search and the interview (or, as the Defendant might argue, the detention). Assuming that the Defendant's position is that the consent was invalid due to an unlawful detention, the Court finds, based on the evidence presented, that the consent was valid and that there was no unlawful detention.

### III. Parcel 3

On January 5, 2017, agents searched Parcel 3, a package that had been "addressed to an E.M." at the Plant City address of W.B., a third party who had, at one point, received a wire transfer from the Defendant. W.B. gave agents consent to search Parcel 3, and they did so. The Defendant had no reasonable expectation of privacy in Parcel 3, and thus, he cannot successfully challenge the search of Parcel 3. The Defendant was neither the sender nor the addressee listed on Parcel 3, and he has not shown that he had a connection to the Plant City address, nor has he established that he used "E.M" as a fictitious alias. *See United States v. Campbell*, 434 F. App'x 805, 809 (11th Cir. 2011).

### IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that the Defendant's Motion to Suppress (Doc. 51) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on January 5, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant